Harry A. Safarian (SBN 204106)
Christina S. Karayan (SBN 225780)
Pierro H. Babaian (SBN 303982)
THE SAFARIAN FIRM, A.P.C.
3150 Montrose Avenue
Glendale, California 91214
Tel: (818) 334-8528
Fax: (818) 334-8107
hs@safarianfirm.com; ck@safarianfirm.com; pb@safarianfirm.com

Attorneys for Plaintiffs,
ANAHIT NAZARETYAN and GARNIK HAKOBYAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANAHIT NAZARETYAN AND GARNIK HAKOBYAN, | Case No. 2:21-cv-03436-AB-Ex |
| Plaintiffs, | Assigned to District Judge: Hon. Andre Birotte Jr. |
| v. | Assigned to Magistrate Judge: Hon. Charles F. Eick |
| ALDEA COMMUNITY ASSOCIATION, a California non-profit mutual benefit corporation; JEROME BLACK, an individual; BETH CORBETT, an individual; DALE RODIN, an individual; and DOES 1 TO 100, | **FIRST AMENDED COMPLAINT FOR MONETARY DAMAGES, DECLARATOR RELIEF, AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL** |
| Defendants. | |

Anahit Nazaretyan and Garnik Hakobyan (collectively, "Plaintiffs") complain of Aldea Community Association, a California non-profit mutual benefit corporation; Jerome Black, an individual; Beth Corbett, an individual; Dale Rodin, an individual; and DOES 1 to 100 (collectively, "DEFENDANTS") as follows:

1

**THE PARTIES.**

1.      Plaintiff Garnik Hakobyan is an adult with mental disabilities. He resides with his mother, Tamara Nazaretyan, and his grandmother, Anahit Nazaretyan, within the Aldea Community Association, a common interest development in Northridge, California. Plaintiff Anahit Nazaretyan is, and all times relevant to this action was, over the age of 65 and an "elder" as defined by California's Elder Abuse Act. Anahit is also disabled, and has been for at least the last two years, suffering from advanced-stage cancer such that a preferential trial setting will be needed in order to protect her rights.

2.      Defendant Aldea Community Association ("Aldea") is a California non-profit mutual benefit corporation, and has, and at relevant times hereto had, as its board members Defendants JEROME BLACK, BETH CORBETT, and DALE RODIN. Each of the referenced board member defendants also resides within the subject development in Northridge, California.

3.      Plaintiffs do not know the true names of Defendants Doe 1 to 100, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations, discrimination, and breaches herein complained of, and allege a joint venture and common enterprise by all such Defendants. Plaintiffs are informed and believe that each of the Defendants herein, including Does, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiffs will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION AND VENUE**

4.      The Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

2

5.      Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

6.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

## STATEMENT OF FACTS

7.      In May 2017, Tamara Nazaretyan purchased a condominium unit within the Aldea Community Homeowners Association. At all relevant times, Tamara's disabled son, Garnik, has lived with her in the unit. Tamara's mother, Anahit Nazaretyan, also lives in the unit.

8.      Garnik, born April 9, 1995, is disabled having been diagnosed with schizoaffective bipolar disorder; said diagnosis of which occurred approximately eight years ago.

9.      On April 11, 2019, because of errors by treating medical providers in administering medication, Garnik suffered a mental breakdown. He did not have adequate or appropriate medication to deal with a mental disability, which caused him to become paranoid, and to suffer a panic attack and hallucinations, during which time Garnik suffered physical injuries to his body and lost blood in a common area of Defendant Aldea Community Association ("Aldea"). On information and belief, two members of the Aldea community interacted with Garnik as he was having his mental episode and complained to Aldea. Defendants, fully aware this was an isolated incident resulting from a medical disability, undertook a series of oppressive, vile, and repugnant discriminatory acts against Garnik and his family members all on account of Garnik's mental illness in order to force Garnik and his family to leave the Association community.

FIRST AMENDED COMPLAINT

10.     Although Garnik has resided at the subject community with his mother, Tamara Nazaretyan, and his grandmother, Anahit Nazaretyan, for approximately four years, the April 2019 incident was the one and only time Garnik has experienced any type of loss of control at the subject HOA community due to his severe mental disability. Since April 2019, Garnik has been under the close supervision of family members, primary of which is his mother, Tamara Nazaretyan, who has left her employment to closely supervise Garnik. He has also been under the watchful care of medical provides who have controlled his medication. Although Garnik has had no further episodes in over two years, he remains disabled, and vulnerable. The acts and omissions by Defendants herein are tantamount to severe psychological abuse, including essentially confining Garnik and his family to their small dwelling, restricting their ability to come and go from their dwelling, and barring their use of all common area amenities—which are essential to Garnik's mental health, and have caused further psychological pain and suffering. Defendants continue to discriminate against and abuse Garnik and his family on account of his mental illness.

11.     In response to the April 11, 2019 incident, Defendant Aldea, by and through board members Black, Corbett, Robins, and Rodin called a Special Meeting of the Board wherein they directed Tamara Nazaretyan to appear and provide an explanation for the April 11, 2019 incident.

12.     Pursuant to the demand, on or about May 9, 2019, Tamara Nazaretyan appeared before the Board of Directors for Defendant Aldea. At that time, Tamara Nazaretyan presented documentary evidence, including but not limited to medical records, relating to Garnik's disability. Without reviewing the medical records, and without engaging in any interactive process, Defendant Aldea returned the records to Tamara Nazaretyan and told her they were not necessary.

13.     At no time after May 9, 2019 did Defendant Aldea, or its property management company, Property Management Professionals ("PMP"), engage in an

4

1   interactive process to ensure that reasonable accommodations were made for Garnik
2   and Anahid or the Nazaretyan household.

3        14.    Instead, beginning soon thereafter, Defendants Aldea, by and through
4   board members Black, Corbett, Robins, and Rodin compounded the mental anguish
5   and difficulty the family endures by virtue of Garnik's disability by terminating access
6   of the entire Nazaretyan household to common areas within the Aldea community.
7   This includes de-activating access cards for the swimming pool area, recreation
8   facilities, barbeque area, and all other common area facilities and the transponder
9   which provides the family access to the pedestrian gate. Nonetheless, Aldea has
10  continually demanded, and the Nazaretyan family has consistently paid, $424 per
11  month for homeowners' association dues to Aldea. While the Nazaretyan household
12  pays the same dues as all other members, they are denied the same access to HOA
13  facilities and amenities, all because of Garnik's disability.

14       15.    The de-activation of access cards has further damaged Garnik's already
15  fragile mental health, further disabling him. Because of the de-activation, the entire
16  Nazaretyan household has even been deprived of the ability to come and go through
17  pedestrian doors and passageways. The family can only enter and exit in motor
18  vehicles using a transponder for vehicles. The psychological consequences for the
19  entire family have proven devastating, causing stress, mental anguish, physical illness,
20  pain, suffering, and depression. The consequences have been particularly difficult for
21  Plaintiffs as Garnik suffers from extreme mental disability and requires the ability to
22  move about as opposed to being confined, and Anahit is an "elder" and confinement
23  is detrimental to her physical and mental state.

24       16.    Plaintiffs are informed and believe that Defendants contend the de-
25  activation of the access cards and transponder were a part of a state court temporary
26  injunction obtained against Tamara Nazaretyan which directed Tamara to keep Garnik
27  out of common areas except to access her unit. Plaintiffs allege the act of de-activation
28  goes well-beyond the temporary injunction issued by the state court. Plaintiffs further

FIRST AMENDED COMPLAINT

allege the temporary injunction did not relieve Defendant Aldea from its obligations and duties to engage the Nazaretyan household in the interactive process and to implement and provide reasonable accommodations.

17.     Garnik's mother, and counsel for the Nazaretyan family, have repeatedly addressed concerns about the discrimination the Nazaretyan family has faced due to Garnik's disability, including to Defendants at board meetings, to Defendants' legal counsel, to board members outside of board meetings, and to other agents of Defendants that work at the property, all to no avail. Indeed, the family has faced ridicule, harassment, and mistreatment in response for their pleas for equal treatment.

18.     Despite these repeated attempts to seek a reasonable accommodation for Granik's disability, neither Defendant Aldea, nor its property management company PMP has engaged in any interactive process with Plaintiffs or Tamara Nazarteyan.

19.     Gail Pinero, the person designated as PMP's person most knowledgeable for the property management company has admitted that during the time she has been assigned to Defendant Aldea, she has never had any discussions with Tamara Nazaretyan, does not know who the members of her household are and was not aware that Garnik had any disability. Ms. Pinero was only informed that there was an altercation involving Garnik. She performed no investigation into the matter and is not aware of PMP taking any steps in engaging Tamara Nazaretyan or the Plaintiffs in an interactive process to ensure reasonable accommodations for Garnik disability or to the Nazaretyan household.

20.     Defendant Dale Rodin, the President of the Board at all relevant times herein, is not aware of the Defendant Aldea performing any investigation into Garnik's disability despite having been advised that the April 11, 2019 incident was a result of his mental disability. Mr. Rodin confirmed there was never any consideration for Garnik's disability and no attempt to engage the Nazaretyan household in the interactive process to ensure reasonable accommodations were made.

FIRST AMENDED COMPLAINT

21.     Defendant Rodin has no information that anyone performed an investigation on behalf of Defendant Aldea to determine whether the members of the HOA had a valid fear relating to Garnik. Defendant Rodin has no information that anyone conducted an investigation to determine whether the April 2019 incident was a result of a one time incident. Defendant Rodin did not undertake any effort at any time to take into consideration Garnik's disability.

22.     Defendant Beth Corbett was likewise not aware of any medical condition relating to Garnik and believed access cards were disabled because of an issue with a fine. Defendant Beth Corbett did not engage in any interactive process.

23.     Instead of engaging in any interactive process as required by the law, Defendant Aldea instead directed its various members to seek restraining orders against Garnik. The restraining orders were denied because there was no evidence Garnik had committed acts of violence against the members of the Defendant Aldea.

24.     Defendant Aldea encouraged another member of the Aldea community to seek a temporary restraining order against Garnik. However, at no time during their communications, did Defendant Aldea inform this member that Garnik had suffered a on-time mental breakdown/episode on account of his disability.

25.     At no time following the April 2019 incident and May 9, 2019 meeting, have Defendants, or their agent, PMP engaged the Nazaretyan family in the interactive process to determine the cause of the incident, Garnik's needs or made attempts to make reasonable accommodations for his disability. This is despite Defendant Aldea's apparent awareness of Garnik's disability, and Tamara's communications to various members of Defendant Aldea about same.

7

## **FIRST CAUSE OF ACTION**

### **VIOLATION OF AMERICANS WITH DISABILITIES ACT**

### **(42 U.S.C. § 12101, et seq.)**

### **(On Behalf of Plaintiffs Against All Defendants)**

26. Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

27. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a).

28. Discrimination is defined, inter alia, as follows:

a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADA Standards.

29. Here, Defendants, and each of them, failed to engage Plaintiffs in the required interactive process and make reasonable accommodations for Plaintiff Garnik's known disabilities. In so doing, Defendants all discriminated against other members of their household. By failing to engage in the interactive process, Defendants created barriers to Plaintiffs' use and enjoyment of the Aldea community despite the fact Plaintiffs/their household were required to pay, and did pay, monthly dues of $424 to Aldea. Defendants, and each of them, actively discriminated against Plaintiffs based upon Garnik's severe mental disability, which disability is so severe

8

that it prevents Garnik from participating in basic life functions, such as regular employment or schooling. The failure to engage in the interactive process has result in a complete deprivation of Plaintiffs' right, treating them in a cruel, unjust way, all on account of Garnik's mental illness, or the familiar association his immediate family members have with him.

30.    As a proximate result of said unlawful practices of Defendants, as herein alleged, Plaintiffs, both of whom are disabled, suffered actual damages, in an amount to be proven at trial.

31.    As a further and direct result of the unlawful practices of Defendants, as herein alleged, Plaintiffs suffered emotional injuries, inter alia, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, anxiety, frustration and injury, and deprivation of property rights, in amounts to be proven at the time of trial.

**SECOND CAUSE OF ACTION**
**FEDERAL HOUSING DISCRIMINATION/FAIR HOUSING ACT**
**(42 U.S.C. § 1981, et seq. and 42 U.S.C. § 3601)**
**(On Behalf of Plaintiffs Against All Defendants)**

32.    Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

33.    The acts described herein constituted discrimination pursuant to 42 U.S.C. section 1981 on the grounds of disability.

34.    The Federal Fair Housing Act of 1988 (42 U.S.C. Section 3601, et seq.) bars discriminatory housing practices, including discrimination by the denial of a dwelling to a person because of race, color, religion, sex, familial status or national origin; the provision of services or facilities in connection with a dwelling. Discrimination is defined to include a refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to

FIRST AMENDED COMPLAINT

afford such persons equal opportunity to use and enjoy a dwelling. (42 U.S.C. Section 3604.)

35.   As a proximate result of said unlawful practices of Defendants, including their wholesale failure to engage in the interactive process to make reasonable accommodations, as herein alleged, Plaintiffs, both of whom are disabled, suffered actual damages, in an amount to be proven at trial.

36.   As a further and direct result of the unlawful practices of Defendants, as herein alleged, Plaintiffs suffered emotional injuries, inter alia, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, anxiety, frustration and injury, and deprivation of property rights, in amounts to be proven at the time of trial.

## **THIRD CAUSE OF ACTION:**

### **UNLAWFUL HOUSING PRACTICES**

### **(California Govt. Code § 12955(a))**

### **(On Behalf of Plaintiffs Against All Defendants)**

37.   Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

38.   California Government Code section 12955, subdivision (a), makes it unlawful for the owner of any housing accommodation to discriminate against any person because of disability. Government Code section 12927, subdivision (c)(l), defines unlawful discrimination as the provision of inferior terms, conditions, privileges, facilities or services in connection with the rental of any housing accommodation the refusal to make reasonable accommodation in rules, policies, procedures or services when these are necessary to afford a disabled person an equal opportunity to use and enjoy a dwelling; and the denial or withholding of housing accommodations.

39.   By refusing to engage in an interactive process with Plaintiffs, Defendants failed to provide the equal use and enjoyment of common areas as

described herein, and essentially confined Plaintiffs to their small dwelling such that they could only come and go from the HOA community by motor vehicle using a transponder, and not by normal pedestrian ingress/egress, and by denying Plaintiffs the use of common area amenities such as the swimming pool, barbeque area, and other recreation/common areas, Defendants engaged in unlawful discrimination on the basis of disability, violating Government Code section 12955(a).

40.   Defendants violated Government Code section 12955(a) because they ignored Garnik's mental disability and failed to engage in any interactive process to determine what reasonable accommodations could be made for him and the Nazaretyan household.

41.   Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure the real parties and in conscious disregard of their rights.

42.   As a proximate result of the unlawful housing practices of defendants, as herein alleged, Plaintiffs have suffered actual damages, in an amount to be proven at the time of trial.

43.   As a further and direct result of the unlawful practices of defendants, as herein alleged, Plaintiffs emotional injuries, inter alia, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, anxiety, frustration and injury in an amount to be proven at the time of trial.

44.   Defendants, by failing to accommodate tenants with disabilities, demonstrated that they have engaged in, and will continue to engage in, a pattern and practice of unlawful housing discrimination unless and until they are enjoined, pursuant to the police power granted by Government Code sections 12920 and 12920.5, and pursuant to Government Code section 12989.2, from failing or refusing to comply with the mandates of the FEHA and the Unruh Act.

11

## **FOURTH CAUSE OF ACTION:**

## **FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS**

### **(Cal. Gov. Code §§ 12955 (a) and 12927 (c)(l))**

### **(On Behalf of Plaintiffs Against All Defendants)**

45.     Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

46.     Government Code section 12955, subdivision (a), makes it unlawful for the owner of any housing accommodation to fail to provide a reasonable accommodation based on disability. Government Code section 12927 (c)(1), defines unlawful discrimination as the provision of inferior terms, conditions, privileges, facilities or services in connection with the rental of any housing accommodation; the refusal to make reasonable accommodation in rules, policies, procedures or service when these are necessary to afford a disabled person an equal opportunity to use and enjoy a dwelling; and the denial or withholding of housing accommodations.

47.     By refusing to engage in the interactive process and determine whether reasonable accommodations could be made to ensure equal use and enjoyment of the Association's facilities, Defendants engaged in unlawful discrimination on the basis of disability, in violation of Government Code sections 12955(a) and 12927(c)(l).

48.     Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure the real parties and in conscious disregard of their rights.

49.     As a proximate result of the failure to engage in the interactive process and determine what, if any, reasonable accommodations could be made by Defendants, as herein alleged, Plaintiffs suffered actual damages, in an amount to be proven at the time of trial.

50.     As a further and direct result of the failure to provide a reasonable accommodation by defendants, as herein alleged, Plaintiffs suffered emotional injuries, inter alia, emotional pain, suffering, inconvenience, mental anguish, loss of

12

enjoyment of life, humiliation, anxiety, deprivation of property rights, frustration and injury in an amount to be proven at the time of trial.

51.     Defendants, by failing to engage in the interactive process and provide reasonable accommodations to a resident with a disability, continually harassing Plaintiffs, including their entire household by depriving them of equal treatment and, and by the other despicable acts described herein, have demonstrated they have engaged in, and will continue to engage in, a pattern and practice of unlawful housing discrimination unless and until they are enjoined, pursuant to the police power granted by Government Code sections 12920 and 12920.5, and pursuant to Government Code section 12920.5 from failing or refusing to comply with the mandates of the FEHA and the Unruh.

52.

## FIFTH CAUSE OF ACTION:

## DISCRIMINATION IN PUBLIC ACCOMMODATIONS

### (Cal. Gov. Code. §§ 12955 (d) and Civ. Code § 51, et seq.)

### (On Behalf of Plaintiffs Against All Defendants)

53.     Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

54.     Government Code section 12955, subdivision (d), makes it unlawful for any person subject to the provisions of section 51 of the Civil Code, as that section applies to housing accommodations, to discriminate against any person because of disability. Civil Code section 51 makes it unlawful for any business establishment to discriminate against any person because of disability.

55.     By engaging in the conduct herein described, Defendants engaged in unlawful discrimination and retaliation on the basis of disability and the real parties' engagement in protected activity, in violation of Government Code section 12955(d) and Civil Code section 51.

13

56.     Defendants' harassment and misconduct as described herein constituted unlawful, intentional and arbitrary discrimination on the basis of disability that deprived the real parties of the full and equal accommodations, advantages, facilities, privileges, or services of a business establishment in violation of Government Code section 12955(d) and Civil Code section 51.

57.     Defendants' actions were willful, malicious, fraudulent, and oppressive, and were committed with the wrongful intent to injure and in conscious disregard of their rights. As a proximate result of Defendants' unlawful actions alleged herein, Plaintiffs suffered actual damages, in an amount to be proven at the time of trial. As a further and direct result of Defendants' unlawful practices, as herein, Plaintiffs suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, anxiety, frustration and injury in an amount to be proven at the time of trial.

58.     Defendants are liable for each and every offense in violation of the Unruh Act (Civil Code section 51) for the actual damages, and any amount that may be determined up to a maximum of three times the amount of actual damages but in no case less than four thousand dollars ($4,000) pursuant to Civil Code section 52, subdivision (a).

59.     Defendants, by refusing to reasonably accommodate a family due to a resident family member's disability, have demonstrated that they have engaged in, and will continue to engage in, a pattern and practice of unlawful housing discrimination unless and until they are enjoined, pursuant to the police power granted by Government Code sections 12920 and 12920.5, and pursuant to Government Code section 12989.2, from failing or refusing to comply with the mandates of the FEHA and the Unruh Act.

FIRST AMENDED COMPLAINT

**SIXTH CAUSE OF ACTION:**

**VIOLATION OF THE UNRUH CIVIL RIGHTS ACT**

**(California Civil Code §§ 51-53)**

**(On Behalf of Plaintiffs Against All Defendants)**

60.     Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

61.     The Unruh Civil Rights Act ("Unruh Act") guarantees, *inter alia*, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code§ 51(b). The Unruh Act also requires establishments to make reasonable accommodations and to engage in an interactive process to determine what reasonable accommodations are available.

62.     The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

63.     Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of Plaintiffs' rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered given Defendants' failure to engage in an interactive process and to provide reasonable accommodations.

64.     Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for Plaintiffs, the Defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code§ 55.56(a) - (c).)

**SEVENTH CAUSE OF ACTION**

**BREACH OF FIDUCIARY DUTY**

**(On Behalf of Plaintiffs Against All Defendants)**

65.     Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

66.     As members of the HOA, Plaintiffs were owed a fiduciary duty by Defendants, and each of them. Defendants breached this duty by actively, deliberately, and maliciously requiring Plaintiffs' household to pay $424 in monthly dues for the benefits of, among other things, use of common area amenities and access while, simultaneously, knowingly and deliberately deactivating Plaintiffs' access cards needed access such facilities.

67.     As members of the HOA, Plaintiffs were owed a fiduciary duty by Defendants, and each of them. Defendants breached this duty by failing to properly investigate the April 2019 incident or even consider the medical records provided to them. In so doing, Defendants breached the fiduciary obligation to engage Plaintiffs in the interactive process to ensure reasonable accommodations were made and that Plaintiffs were provided appropriate access to the community.

68.     Defendants continue to engage in said vile, repugnant, and malicious acts, knowing full well that Garnik's episode was the result of medical neglect due to mismanagement of medication; that it was an isolated mental breakdown that was totally outside Garnik's control and purely the result of a mental disability; that no like incident has occurred in over two years. Defendants have refused, and continue to refuse, to engage the Nazaretyan family in the interactive process despite full knowledge of Garnik's mental disability.

## EIGHTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (On Behalf of Plaintiffs Against All Defendants)

69.     Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

70.     The conduct complained of herein was extreme and outrageous such that it should not be tolerated in any civilized society. Said conduct was done knowingly,

16

willfully, oppressively, and maliciously, with full knowledge it would cause, and did cause, severe emotional distress to Plaintiffs, and each of them

### NINTH CAUSE OF ACTION
### ELDER ABUSE IN VIOLATION OF
### CAL. WEL. & INST. CODE §15600, et seq.
**(On Behalf of Plaintiff Anahit Nazaretyan Against All Defendants)**

71.    Plaintiffs re-plead and incorporate by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

72.    In 1991 the California Legislature enacted the Elder Abuse Act, codified at California Welfare & Institutions Code §15600 et seq. In enacting the Elder Abuse Act, the Legislature expressly recognized that elders (defined as persons above the age of 65) are victims of financial fraud and abuse, among other forms of neglect and harm, and intended to provide enhanced civil remedies to redress the reckless acts and/or omissions within the Act's ambit that are perpetrated against our elders.

73.    As alleged above, Defendants committed acts or omissions as that term is used in Welfare & Institutions Code §15610.30 by doing those things described herein, at which time Plaintiff Anahit was over the age of 65 and therefore an "elder" within the meaning of the California Elder Abuse Law. (California Welfare & Institutions Code §15610.27).

74.    Defendants, and each of them, played a material function in committing the breaches and violations described herein and thereby legally and proximately caused damages. By engaging in the acts alleged above, Defendants committed directly and aided and abetted abuse of an elder. The conduct described herein, was reckless, oppressive, fraudulent, and malicious within the meaning of California Welfare & Institutions Code §15657 et seq. Under California Civil Code §3294 and California Welfare & Institutions Code §15657.5, Cross-Defendant George is liable for compensatory, all other remedies otherwise provided for law, attorneys fees and costs, as well as punitive damages.

17

1

2
## **PRAYER**

3      Wherefore, Plaintiffs pray that this Court award damages and provide relief as

4  follows:

5      1.      For injunctive relief, compelling Defendants to comply with the

6  Americans with Disabilities Act and the Unruh Civil Rights Act.

7      2.      Damages under the Unruh Civil Rights Act, which provides for actual

8  damages and a statutory minimum of $4,000 for each offense. In the instant case,

9  through the date of the filing of this lawsuit, Plaintiffs contend actual damages of no

10  less than $500,000 each, and contend minimum daily statutory damages of $4,000

11  ($8,000 per day combined). These damages are accruing, and approximately 700 days

12  have now passed as of the filing of his lawsuit, resulting in total statutory damages of

13  $5,600,000.

14      3.      Reasonable statutory attorney fees, litigation expenses and costs of suit

15  pursuant to, among other statutes, 42 U.S.C. § 12205; and Cal. Civ. Code§§ 52.

16      4.      For actual damages including general damages for pain, suffering,

17  physical and mental anguish, and economic damages including, among other items,

18  loss of use of property and excess dues collected.

19      5.      For punitive damages.

20      6.      Pre- and post-judgment interest as allowed by law.

21      7.      All such other and further relief as the Court may deem just and proper.

22                              THE SAFARIAN FIRM, APC

23

24  DATED:  July 13, 2022           By: _____

25                                      HARRY A. SAFARIAN

26                                  Attorneys for Plaintiffs,
                                    ANAHIT NAZARETYAN and
                                    GARNIK HAKOBYAN

27

28

---

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

PROOF OF SERVICE